UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIA ELAINE LOUGHNEY,<br><br>              Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No. 2:25-cv-00454-WBS-CSK<br><br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 6, 9) |

Plaintiff Marcia Elaine Loughney seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits and supplemental security income.[1] In her summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends that Plaintiff's motion be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

---

[1]  This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. *See* Local Rule 304.

1

## I.      SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

**Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.

**Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.

**Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.

**Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.

**Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the

Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II.   FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On February 17, 2022, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging she has been disabled since July 19, 2021. Administrative Transcript ("AT") at 58 (available at ECF No. 5). Plaintiff claimed disability due to a fusion in the back at L4 and L5[2], a fused right

---

[2] The L4 and L5 are two of five bones that exist on the lower back region of the spinal column.

sacroiliac ("SI") joint[3], a fused left SI joint, severe arthritis, bulging discs in back, spinal stenosis in back, synovial cyst on the spine, and sinus tachycardia. *Id*. Plaintiff's applications were denied initially and upon reconsideration; she sought review before an ALJ. *Id*. at 70, 72, 104, 111. Plaintiff appeared with a representative at a May 4, 2024 hearing before an ALJ, where Plaintiff testified about her impairments and a vocational expert testified about hypothetical available jobs in the national economy. *Id*. at 23-49.

On December 11, 2024, the ALJ issued a decision finding Plaintiff was not disabled. *Id*. at 1-22. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 19, 2021. *Id*. at 12. At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar spine dysfunction and bilateral sacroiliac dysfunctions status post fusions. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. *Id*. at 13. (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listing 1.15 (disorders of the skeletal spine) and Listing 1.18 (abnormality of a major joint) for Plaintiff's physical impairments. *Id*.

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b)), except that Plaintiff could only: "stand and walk up to two hours of an eight hour workday, sit up for six hours of an eight hour workday, and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stop, kneel, crouch, and crawl." *Id*. In crafting the residual functional capacity, the ALJ stated that he considered Plaintiff's symptom testimony, medical opinions, and prior administrative medical findings. *Id*.

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was capable of performing past relevant work as a secretary (Dictionary of Occupational Titles ("DOT") No. 201.362-030), sedentary, medium as performed, SVP

---

[3] The sacroiliac joint is between the spine and pelvis.

6.[4] *Id*. at 17. The ALJ made this decision based on the testimony of the vocational expert that Plaintiff could "perform the past relevant work as generally performed." *Id*. Thus, the ALJ determined that Plaintiff was not disabled during the relevant period. *Id*.

## III.   ISSUES PRESENTED FOR REVIEW

Plaintiff contends that the ALJ erred by failing to "provide clear, convincing, and well supported reasons for discounting Plaintiff's allegations of pain and physical dysfunction; by erroneously rejecting the medical opinions of Drs. A. Khong, M.D., and Gregory Helbig, M.D.; by improperly classifying Plaintiff's past relevant work according to its least demanding function; and by the vocational expert testifying that the secretary occupation typically requires sitting more than six hours, which would prevent Plaintiff from performing the occupation. Pl. Mot. Summ. J. at 5.

In contrast, Defendant argues that the ALJ properly evaluated Plaintiff's subjective symptom allegations and the medical opinions of Drs. Khong and Helbig. Def. Mot. Summ. J. at 3, 7. Additionally, Defendant argues that the ALJ properly classified Plaintiff's past relevant work as a secretary and properly determined that Plaintiff could perform the secretary occupation as generally performed. *Id*. at 9, 11.

## IV.   DISCUSSION

### A.   Plaintiff's Subjective Symptom Testimony

#### 1.   Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering,

---

[4]   "Sedentary" in the ALJ's step-five determination references sedentary work, as defined by 20 C.F.R. § 404.1567(a).

"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

### 2. Analysis

Plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Pl. Mot. Summ. J. at 5-10. Plaintiff

argues that the ALJ's reasoning fails to account for returning nerve pain to Plaintiff's legs as well as being prescribed medication to treat nerve pain in March of 2024. *Id*. (citing AT 321). Plaintiff also further argues that she is unable to "climb ladders, ropes, or scaffolds, or kneel or crawl; can navigate a very slight ramp or few stairs; and that she is unable to sit for six hours in an [eight] hour workday." *Id*. Additionally, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff had a closed period of disability between July 21, 2021, the date of Plaintiff's first surgery, and the end of 2022, during Plaintiff's alleged recovery from her most recent surgery. *Id*. at 7, 10.

In contrast, Defendant contends that the ALJ properly evaluated Plaintiff's symptom testimony by highlighting inconsistencies with the objective medical record and on the basis that Plaintiff's condition improved with treatment. Def. Mot. Summ. J. at 3-5. The Court agrees with Defendant.

The ALJ began his analysis by referencing Plaintiff's hearing testimony. AT 14. Plaintiff testified that she stopped working in 2021 because of a sacroiliac fusion, and another developed on her other side sometime after she stopped working. *Id*. She subsequently underwent several spinal surgeries, with her most recent in 2022. *Id*. Plaintiff can currently stand and walk for twenty to thirty minutes at a time before needing to sit up for thirty to forty minutes. *Id*. However, Plaintiff testified she needs to change positions every thirty minutes when sitting and lies down two hours a day. *Id*.

The ALJ found that while Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," Plaintiff's statements regarding their "intensity, persistence, and limiting effects," are not entirely consistent with both the medical evidence and other evidence in the administrative record. *Id*.

The ALJ found that while Plaintif's alleged impairments limited her to the extent stated in her residual functional capacity, it was not greater because Plaintiff saw significant improvement after each of her fusions. *Id*. at 15 (citing AT 439, 445, 455, 461). Additionally, the ALJ cites to Plaintiff's May 16, 2022 consultative examination, where her straight leg raising was negative, she had full power in her bilateral extremities

and her right lower extremity, and full strength in her left lower extremity. *Id*. The ALJ notes that Plaintiff walked with a limp without need of an assistive device. *Id*. (citing AT 527-30).

The ALJ then cites to Plaintiff's post-lumbar spine surgery follow-up visit on September 15, 2022, where Plaintiff "reported tremendous improvement in her back pain and total relief of her leg pain and paresthesias." *Id*. Plaintiff also "declared herself happy with the surgery." *Id*. (citing AT 536).

At a November 9, 2022 physical therapy evaluation, Plaintiff reported "extremity weakness, fatigue, and tightness in her back," however, Plaintiff "reported she was not under any current restrictions, had no significant complaints of pain, and was able to walk a third of a mile before getting fatigued." *Id*. (citing AT 582). At an eight month post-lumbar spine surgery follow up with her spine specialist, Plaintiff once again reported "she was doing very well overall and. . . no leg pain." *Id*. She was subsequently released from regular follow up visits after this appointment and only "instructed to return as needed." *Id*. (citing AT 694).

Finally, during an evaluation in September 2023, Plaintiff "denied any ongoing pain." *Id*. at 16. The report stated Plaintiff's "gait was unimpaired and her overall physical examination was unremarkable." *Id*. (citing AT 665). At Plaintiff's hearing, she stated she does not use a cane or need any bracing for her hips or back. *Id*.

In summary, the ALJ specifically highlighted inconsistencies between Plaintiff's subjective testimony and the objective medical record, which included evidence that Plaintiff's condition improved with treatment. AT 14-16. Therefore, the Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptoms and recommends denying Plaintiff summary judgment on this issue and granting Defendant summary judgment on this issue.

**B. Medical Opinion Evidence**

1.   <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a

8

succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new[5] regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906

---

[5]   The new regulations on how courts must consider medical opinions and prior administrative medical findings became effective for claims occurring on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a).

(E.D. Mich. 2021)).

>                    2.        Analysis

Plaintiff was first examined by Dr. A. Khong on June 9, 2022 as part of her initial disability determination. AT 63. Dr. Khong found that Plaintiff can

> [L]ift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk two hours of an eight-hour day, sit six hours of an eight hour day, must be allowed to briefly change positions every thirty minutes, never climb ladders, ropes, and scaffolds, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

AT 16. The ALJ found this to be partially persuasive on the basis of partial consistency with the overall record. *Id*. However, the ALJ also partially discounted Dr. Khong's assessment because of Plaintiff's "unremarkable" recovery from her sacroiliac fusions and second lumbar surgery, no need for an assistive device, as well as no ongoing back pain. *Id*. Instead, the ALJ found Plaintiff "could occasionally climb ladders, ropes, and scaffolds and does not require a sit/stand option." *Id*.

Plaintiff's physician, Dr. Gregory Helbig, also evaluated Plaintiff and provided recommendations. *See* AT 353-510. Dr. Helbig stated that Plaintiff "was limited to lifting under twenty five pounds and was unable to sit for long periods of time." AT 16. The ALJ found this recommendation to be a "vague statement of temporary limitations," and unpersuasive. *Id*. The ALJ discounted Dr. Helbig's sitting recommendation based on Plaintiff's "unremarkable" recovery from her sacroiliac fusions and second lumbar surgery, lack of an assistive device, and no ongoing back pain in partially. *Id*.

Plaintiff argues that the dismissal of Dr. Khong's and Dr. Helbig's opinions were cursory. Pl. Summ. J. at 13. First, Plaintiff argues that substantial evidence did not support the ALJ's rejection of physical limitations. *Id*. Plaintiff argues that she "consistently represented that she was unable to maintain any posture for more than about 30 minutes…" *Id*. However, Plaintiff incorrectly argues that the ALJ only cited to the hearing when describing Plaintiff's recovery as unremarkable. AT 16. Second, Plaintiff argues that the ALJ analysis about the supportability of each opinion was

cursory and lacks analysis as to the consistency of each opinion. Pl. Summ. J. at 13. While Plaintiff acknowledges that the inconsistency referred to in the ALJ opinion may refer to the ALJ's own determination that Plaintiff's recovery was unremarkable, Plaintiff argues that the analysis does not address the consistency among the other medical opinions in the record, as well as the consistency of the opinions with the results of examinations and diagnostic testing, which support a closed period of disability. *Id*. Plaintiff argues that the discounting of Dr. Khong's and Dr. Helbig's opinions was prejudicial error because it leads to an inaccurate assessment of whether Plaintiff has the ability to return to her past work as a secretary. *Id*. at 13.

In contrast, Defendant argues that the ALJ's discounting of Dr. Khong's opinion was proper. Def. Summ. J. at 7-9. Defendant first acknowledges that the ALJ found Dr. Khong's opinion partially persuasive based on the supportability and consistency factors. *Id*. (citing AT 16, 61-68). The ALJ approved of Dr. Khong's analysis regarding limitations for lifting and carrying the light exertional range; standing and walking only two hours of an eight-hour day; and only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. *Id*. (citing AT 427, 430, 527-530, 689). Defendant argues that because the ALJ found Plaintiff's recovery "unremarkable" from her surgeries, among other factors, that a portion of Dr. Khong's findings were more limiting than required, accordingly the ALJ found that Plaintiff could occasionally climb ladders, ropes, and scaffolds and did not require a sit/stand option. AT 16, 27-38, 338, 665. Also, Defendant argues that the ALJ's findings were consistent with the opinion of Dr. Trias who, like the ALJ, also found that Plaintiff could occasionally climb ladders, ropes, and scaffolds, and did not require a sit/stand option. AT 16, 78-73.

Defendant further argues that the ALJ properly discounted Dr. Helbig's opinion for similar reasons. Def. Summ. J. at 8. Defendant contends that the ALJ properly determined Dr. Helbig's opinion that Plaintiff was limited to lifting under twenty-five pounds and unable to sit for "long periods of time," was a "vague statement of temporary limitation." *Id*. Additionally, Defendants argue that Dr. Helbig's opinion was inconsistent

11

with Plaintiff's recovery, not needing assistive device or bracing, and no ongoing back or leg pain. *Id*.

The Court finds the ALJ has met both supportability and consistency factors in his reasoning for discounting portions of Dr. Khong's opinion and rejecting Dr. Helbig's opinion. The ALJ sufficiently analyzed and articulated why portions of Dr. Khong's and Dr. Helbig's opinions lacked supportability because they were contradicted by objective medical evidence of Plaintiff's 2023 recovery. AT 16. The ALJ's findings were also consistent with the opinion of Dr. Trias, who had a less limiting set of findings. *Id*. Therefore, the Court concludes the ALJ properly evaluated the medical opinions of Dr. Khong and Dr. Helbig, and sufficiently articulated his reasons for discounting them. The Court recommends denying Plaintiff summary judgment on this issue and granting Defendant summary judgment on this issue.

### C. Proper Work Classification

#### 1.    Legal Standards

At step four of the five-step disability determination process, "claimants have the burden of previously showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citation omitted). However, the ALJ has the duty to make the requisite factual findings to support his conclusion by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. *Id*. at 844-45 (citation omitted). "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). "The DOT is the best source for how a job is generally performed." *Pinto*, 249 F.3d at 845. However, when making this determination, the ALJ may not classify an occupation "according to its least demanding function." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

#### 2.    Analysis

Plaintiff argues that the ALJ improperly classified Plaintiff's past relevant work as

a secretary. Pl. Summ. J. at 14. Plaintiff argues that even though the ALJ relied on the vocational expert's classification at the administrative hearing, such classification was according to "its least demanding function." *Id*. Here, Plaintiff argues that she reported in her past work that she had "set up classrooms and educations (sic) fairs for nurse editors." *Id*. at 15 (citing AT 30). This work consisted of "active days" requiring lifting and walking back and forth "between the classrooms and the hospital across the street for supplies." *Id*. (citing AT 20, 238-239). In her testimony, Plaintiff described doing these duties approximately six hours a day. *Id*. (citing AT 43-44). Plaintiff further argues that neither the vocational expert nor the ALJ properly accounted for these additional duties. *Id*. (citing AT 18, 39). Further, Plaintiff argues that the vocational expert "characterized the more active aspects of the job as other duties as assigned," and would not change the classification from secretary. *Id*. (citing AT 41-46). Plaintiff argues the ALJ committed prejudicial error by relying on the vocational expert's testimony, which characterized Plaintiff's past work as secretary according to its "least demanding function." *Id*. at 15-16.

Defendant contends that the ALJ properly classified Plaintiff's past work as a secretary. Def. Summ. J at 9-11. Defendant argues that the ALJ's ruling was based on past relevant work as a secretary as generally performed. *Id.* at 10 ("Past relevant work can be as the claimant actually performed the work, or as the past relevant work is generally performed." (citation omitted)). Defendant contends that after hearing Plaintiff's testimony and the testimony of the vocational expert, Plaintiff was "still capable of performing past relevant work as a secretary, generally performed but not as actually performed." *Id*. (citing AT 17-18). Defendant further argues that the vocational expert's consideration of different aspects of Plaintiff's previous job amounted to "other assigned duties" and "helping out with certain things that was going on in the office." *Id*. (citing AT 42-43). Accordingly, Defendant contends the ALJ properly used the vocational expert's expertise to determine whether Plaintiff can perform past relevant work and that substantial evidence supported the conclusion. *Id*. at 11.

In Plaintiff's testimony before the ALJ, she stated that she performed all the

functions of a secretary "and more." AT 40-41. During the examination of the vocational expert by Plaintiff's attorney, the expert found that Plaintiff's work was more akin to administrative assistant, however "[Plaintiff] indicated she did all the jobs as a secretary..." *Id*. at 41. When pressed for why the expert did not assign a composite job, the expert stated the "[a]dministrative assistant. . . does a lot more than what [Plaintiff] described. They do additional duties in regards (sic) to work with different departments and she indicated she was doing other tasks." *Id*. at 42. While the expert acknowledged that if the secretarial duties encompassed only half the day or less, Plaintiff was entitled to a finding of a composite or hybrid job, the expert found Plaintiff's other tasks such as setting up classrooms or Plaintiff's "active days" as "just helping out with certain things that was going on in the office." *Id*. at 43. During later testimony, Plaintiff stated that she spent time doing the alleged "non-secretarial work" for "probably six hours" or "at least half the day." *Id*. at 43-44.

The district court may not reverse the ALJ's findings unless they are unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). Here, the ALJ relied on the vocational expert's testimony in determining which category of work Plaintiff needed to be classified. AT 17. "A vocational expert]'s testimony is one type of job information that is regarded as inherently reliable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The vocational expert determined that Plaintiff's allegedly non-secretarial tasks fell within the boundaries of additional duties asked of a secretary, rather than tasks of a different job within another DOT category. *Id*. at 41-44. Plaintiff also acknowledged that she performed all the functions of a secretary. *Id*. at 40-41. The Court agrees with Defendant that there was substantial evidence to categorize Plaintiff's work as secretarial and recommends denying Plaintiff summary judgment on this issue and granting Defendant summary judgment on this issue.

/ / /

14

**D. Proper Assessment of Past Work as Generally Performed**

1.    Legal Standards

The district court may not reverse the ALJ's findings unless they are unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

When considering work which exists in the national economy, ALJs will take notice of DOT definitions. 20 CFR S 404.1566(b). The Ninth Circuit has found DOT definitions to be "the best source for how a job is generally performed." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

2.    Analysis

Plaintiff argues that remand is necessary to reevaluate whether Plaintiff could perform her past work as generally performed. Pl. Summ. J. at 16. Plaintiff argues that the vocational expert contradicted himself when he initially testified that "a person limited to sitting up to six hours in an 8-hour workday could perform Plaintiff's past relevant work as a secretary," but then on cross-examination agreed in response to a single question that "the secretary occupation typically requires more than [six] hours of sitting." *Id*. (citing AT 39, 47). Plaintiff argues that the vocational expert's response makes his analysis "internally inconsistent." *Id*. Plaintiff argues the ALJ did not address this inconsistency in his final analysis. *Id*. (citing AT 17-18). Therefore, Plaintiff argues the vocational expert's testimony "failed to constitute substantial evidence supporting the ALJ's step four determination that Plaintiff could perform her past relevant work as the work is generally performed in the national economy." *Id*.

In contrast, Defendant argues that the ALJ made a proper determination that

Plaintiff could perform the secretary occupation as generally performed. Def. Mot. Summ. J. 11-12. Defendant argues that the ALJ's findings are unimpaired by the alleged discrepancy in testimony. *Id*. at 12. Defendant argues that a "step four determination does not require an inquiry into whether the claimant's previous work exists in substantial numbers in the national economy." *Id*. (quotation omitted). Additionally, Defendant argues that ALJs routinely rely on the DOT to determine how jobs are generally performed. *Id*. (citing *Pinto*, 249 F.3d 840 at 845). Defendant points to the definition of secretary under the DOT definition, which "requires the ability to perform at the sedentary exertional level." *Id*. Therefore, based on the DOT definition, Defendant contends that Plaintiff could "still perform the secretary occupation as generally performed based on the DOT," since the sedentary definition would require Plaintiff to be seated six of eight hours. *Id*.

The ALJ bases his step four classification on the vocational expert's testimony regarding "a person with the claimant's vocational profile and residual functional capacity." AT 18. The expert testified "that such a person could perform the past relevant work as performed." *Id*. The ALJ concluded that Plaintiff could perform past relevant work as a secretary by comparing the claimant's residual functional capacity with the physical and mental demands of the work. *Id*. The vocational expert's testimony references the DOT definition. AT 39. First, in reference to the DOT definition when classifying Plaintiff's previous work. *Id*. Second, after being asked whether a person with Plaintiff's physical limitations could perform Plaintiff's past work. *Id*. The vocational expert answered in the affirmative, stating "Yes. It would remain per DOT, however, as actually performed it would be eliminated." *Id*. Finally, when asked whether an individual could still perform the secretarial work per the DOT, the vocational expert answered affirmatively. *Id*.

The Court concludes that the ALJ's findings are based on substantial evidence. The ALJ relied on the DOT definition of secretary (DOT No. 201.362-030) to determine how this job is generally performed, which is at the sedentary exertional level. AT 17;

*see Pinto*, 249 F.3d 840 at 845; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. § 404.1566(d). Sedentary work requires an individual "to remain in a seated position for approximately 6 hours of an 8 hour workday." Def. Mot. Summ. J. 12 (citing SSR 82-61; SSR 96-9p; POMS DI 25015.020). The ALJ also relied on the vocational expert's testimony that an individual with Plaintiff's vocational profile and residual functional capacity "could perform that past relevant work as generally performed." AT 18. The fact that the vocational expert testified on cross-examination in response to one question that a secretary job "typically" would entail more than six hours of sitting does not render the ALJ's finding as lacking substantial evidence. Therefore, the Court finds that there was substantial evidence for the ALJ to make his classification and recommends denying Plaintiff summary judgment on this issue and granting Defendant summary judgment on this issue.

## V.     CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

<b><u>RECOMMENDATIONS</u></b>

Accordingly, the Court RECOMMENDS:

1.     Plaintiff's motion for summary judgment (ECF No. 6) be DENIED;

2.     The Commissioner's cross-motion (ECF No. 9) be GRANTED;

3.     The final decision of the Commissioner is AFFIRMED; and

4.     The Clerk of the Court is directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply

17

to the objections shall be served on all parties and filed with the Court within 7 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  February 18, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, loug.0454